# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PIO RODRIGUEZ,<br><br>           Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br><br>           Defendant. | 1:10-cv-01255 GSA<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## **BACKGROUND**

Plaintiff Pio Rodriguez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income benefits pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (*See* Docs. 8 & 9.)

1

# FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed an application for supplemental security income benefits in November 2006, alleging disability beginning January 1, 2002.[3] AR 154-162. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 88-101, 103-105. ALJ James P. Berry held a hearing and issued an order denying benefits on November 19, 2009, finding Plaintiff was not disabled. AR 8-16. On May 13, 2010, the Appeals Council denied review. AR 1-3.

**Hearing Testimony**

ALJ Berry held a hearing on September 2, 2009, in Fresno, California. Plaintiff appeared and testified; he was assisted by non attorney representative Anthony Gonzales. Vocational Expert ("VE") Judith Najarian also testified. AR 17-56.

Plaintiff was born June 7, 1962,[4] and was forty-seven years old on the date of the hearing. AR 23. He lives by himself in Fresno[5], and receives general relief and food stamp assistance. AR 25; *see also* AR 41. Plaintiff dropped out of high school in the tenth grade. He has not received any vocational training. AR 24. Plaintiff does not have a driver's license because it was "taken away" as a result of drunk driving offenses. AR 25. He relies primarily upon his sister for transportation, but will use his bus pass "[o]nce in awhile." AR 26. Plaintiff believes he last worked in 1990 or 1991 delivering auto parts.[6] AR 39.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] A prior application made in 2004 was denied in 2006. AR 73-82.

[4] The ALJ's findings record Plaintiff's date of birth as "June 17, 1961" (AR 14), however, Plaintiff's application for benefits corresponds with his own testimony. AR 154.

[5] Prior to living in his current apartment, Plaintiff had an apartment at the Home Center facility that provided housing for its patients with substance abuse problems. *See* AR 41-42, 49.

[6] The record contains evidence that Plaintiff worked after 1991 as the following earnings were recorded: 1993 - $3032.90; 1994 - $11803.86; 1995 - $9690.50; 1996 - $388.42. AR 164-168. Plaintiff did testify that he was "no good with dates." AR 48. In an undated Disability Report - Adult Form (AR 174-181), Plaintiff responded to the question "when did you stop working?" with "07/15/1996." *See* AR 175.

Plaintiff applied for supplemental security income benefits in November 2006, alleging he has been disabled due to liver problems. AR 20-21. The doctors have diagnosed him with hepatitis C and cirrhosis of the liver. AR 22. He understands the condition was caused by his drinking too much alcohol; he quit drinking about four years ago. AR 22-23. Plaintiff is treated for this condition at Community Medical Centers. He was treated a week prior to the hearing for "banding" in his throat, having received the same treatment about six months prior. AR 27-28. The banding treatment is to repair damage in his throat caused by his drinking. As he understands it, without the banding, "the veins in there are ready to bust so it's like they have to like put rubber bands around them to like cut the pieces off that, that are there so that way I won't throw up blood . . .." AR 29. While he does not "throw up" blood, he does spit up blood nearly every day. AR 29. He is to return to Community Medical Center for another banding procedure in two weeks' time. AR 30. His treating physician, Dr. Dominic, told him to "sign up" for a liver transplant. AR 37-38.

Plaintiff feels a burning "ugly feeling" in his stomach. AR 29. He takes Nexium on a daily basis, and understands that the medication acts to coat his stomach as a result of the damage caused by drinking. AR 28.

In addition to his liver problems, Plaintiff suffers from "a lot of pain" and anxiety. AR 24-25. He experiences anxiety a couple times a week and does not like being around others. AR 25; *see also* AR 50-51. When he was asked to describe what happens when he is around too many other people, Plaintiff replied he "can't breathe" as if someone was choking him. He has reported those symptoms to his physicians and has been prescribed medication for the condition. AR 26. The medications prescribed were identified as Seroquel, Ambien and Paroxetine (or Paxil). AR 27. Plaintiff indicated the medications help a little, but "[n]ot really." AR 27; *see also* AR 45. Plaintiff has been taking these medications for three or four years. AR 45-46.

Plaintiff obtains treatment for anxiety at Kingsview. He sees a psychiatrist. AR 33. When he was asked whether the staff at Kingsview suggested he return to work or go to school, Plaintiff replied, "they wanted me to, but they, like they know my condition already because of

my anxiety and stuff so they, they just ask me how would you feel about going to something like that, and I told them I don't think I could handle that . . . ." AR 33-34.

Plaintiff testified that the liver problems, throat problems, and anxiety keep him from working. AR 30. On a typical day, he gets up late. AR 30-31. When asked what he does all day, Plaintiff replied, "[r]eally nothing." AR 31. He explained that he is often in bed or on the couch, and that he "change[s] from place to place" because he cannot stand too long. AR 31. He watches television and sleeps during the day. AR 32. Once in a while Plaintiff will prepare his own meals. AR 31. He does very little housekeeping, and his sister does his laundry. AR 31. He leaves the house when he has an appointment then returns home, otherwise he becomes anxious and his feet swell. AR 31-32. With regard to social activities, Plaintiff indicated he does not go to church on a regular basis, nor does he visit with friends or go to the movies. AR 32-33; *see also* AR 37.

When asked how long he could walk, Plaintiff indicated he could walk about forty-five minutes at a regular pace before his feet would hurt. AR 34-35. He can sit less than an hour. AR 35; *see also* 42-43. He can lift two gallons of milk. AR 36. Plaintiff indicated he cannot maintain concentration by stating he is "[n]ot too good at it," and could not provide an estimate as to the period of time he would be able to concentrate on a task. AR 36-37.

The ALJ asked Plaintiff whether he could do a job that required him to sit in a chair for eight hours counting trucks and taking its number; Plaintiff testified he could not because he cannot sit that long. AR 46-47. When he was asked whether he could perform that job if he could sit *or* stand, Plaintiff replied he still could not do the job. AR 47.

Plaintiff's past work involves work as a temporary laborer in 1996. VE Najarian indicated that such a position might involve stacking and loading items in a warehouse, which would be classified as medium, unskilled work with an SVP[7] of two. AR 53.

The VE was asked to consider a hypothetical worker of Plaintiff's age, education and work history, who can lift and carry fifty pounds occasionally and twenty-five pounds frequently,

---

[7]"SVP" refers to specific vocational preparation.

4

can stand, walk, and sit for six hours each in an eight-hour work day, has the ability to perform simple, repetitive tasks and maintain attention, concentration, persistence and pace, and can relate to and interact with others in a work setting and can adapt to usual changes and adhere to safety rules. AR 54. The VE indicated such an individual could perform Plaintiff's past relevant work as a store laborer. AR 54. The individual could also perform the full range of unskilled, medium, light and sedentary work. AR 54. Three examples of medium work would include: industrial cleaner, DOT[8] 381.687-018, with approximately 115,181 jobs available in California; machine packager, DOT 920.685-078, with approximately 5,483 jobs available in California; and hand packer, DOT 920.587-018, with approximately 23,514 jobs available in California. National figures are obtained by multiplying these figures by nine. AR 54-55.

In a second hypothetical, the VE was asked to assume the same factors as indicated previously, however, the individual could lift and carry about sixteen pounds maximum, could sit for forty-five minutes total, stand less than one hour and walk thirty minutes total. The individual would require unscheduled breaks throughout the work day and would have difficulty interacting and relating to others, as well as maintaining persistence and pace. AR 55. VE Najarian indicated such an individual could not perform Plaintiff's past work, nor could such an individual perform any work as typically found in the regional or national economy. AR 55.

**Medical Record**

The entire medical record was reviewed by the Court. AR 234-531. The medical evidence will be referenced below as necessary to the Court's decision.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 8-16.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 29, 2006. AR 10. Further, the ALJ identified schizoaffective disorder, cirrhosis, and alcohol dependence as severe impairments. AR 10-11. Nonetheless, the ALJ

---

[8]"DOT" refers to the Dictionary of Occupational Titles.

determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 11.

Based on his review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform medium work, and that he can: perform simple repetitive tasks; maintain concentration, persistence and pace; relate to others; and adapt to changes in work setting; and adhere to work safety rules. AR 11-14.

Next, the ALJ determined that Plaintiff could perform his past work as a store laborer. AR 14. Additionally, based upon Plaintiff's age, education, work experience and RFC, the ALJ determined there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform. Specifically, the ALJ found Plaintiff could perform the work of an industrial cleaner, machine tender, and hand packer. AR 14-15.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff argues that the ALJ's findings are not supported by substantial evidence and are not free of legal error because the ALJ failed to (1) properly evaluate the medical evidence and (2) properly evaluate Plaintiff's subjective complaints. (Doc. 14.)

**DISCUSSION**

*The ALJ's Consideration of the Medical Opinion Evidence*

Plaintiff argues that the ALJ erred in finding that he did not demonstrate changed circumstances to rebut a prior decision denying benefits pursuant to *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988). More specifically, Plaintiff asserts the medical evidence demonstrates "deterioration of [his] liver impairment" to "end stage liver disease." (Doc. 14 at 8-11; Doc. 24 at 3-5.) The Commissioner contends Plaintiff failed to establish that he was precluded from performing his past work and that ALJ Berry properly applied *Chavez*'s continuing presumption of non-disability. (Doc. 21 at 7-11.) Plaintiff also argues the ALJ erred in assessing his mental impairment. (Doc. 14 at 11.)

    **1.**    **Applicable Legal Standards**

When an applicant has one or more previous denials of applications for disability benefits, as Plaintiff does here, he or she must overcome a presumption of nondisability. The principles of res judicata apply to administrative decisions, although the doctrine is less rigidly applied to administrative proceedings than in court. *Chavez v. Bowen*, 844 F.2d at 693; *Gregory*

7

*v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988). Acquiescence Ruling 97-4(9), adopting *Chavez*, applies to cases involving a subsequent disability claim with an unadjudicated period arising under the same title of the Social Security Act as a prior claim in which there has been a final administrative decision that the claimant is not disabled. A previous final determination of nondisability creates a presumption of continuing nondisability in the unadjudicated period. *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995). The presumption may be overcome by a showing of changed circumstances, such as new and material changes to the claimant's residual functional capacity, age, education, or work experience. *Lester*, at 827-28; *Chavez*, 844 F.2d at 693.

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer v. Sullivan*, 908 F.2d at 506 n.4; *Gallant v. Sullivan*, 753 F.2d at 1456. In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians . . . ." *Magallanes*, 881 F.2d at 752. Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.

### 2. Summary of Relevant Medical Evidence

*Ekram Michiel, M.D.*

On December 30, 2006, a psychiatric evaluation was performed by board certified psychiatrist Ekram Michiel. AR 368-370. The mental status examination revealed fair grooming, normal gait and posture, no involuntary movements, good eye contact and normal speech. Plaintiff was oriented to person, place and date; insight and judgment were intact. AR 369. His mood was depressed and affect restricted; he denied suicidal or homicidal ideation. AR 369-370. Plaintiff's thought process was goal directed, content was not delusional and there was no evidence of response to internal stimuli. He did state he becomes paranoid around people and admitted to auditory and visual hallucinations. AR 370.

At Axis I, Dr. Michiel diagnosed a psychotic disorder not otherwise specified and recorded a GAF[9] score of 65 at Axis V. With specific regard to adaption to work or work-like

---

[9]The Global Assessment of Functioning or "GAF" scale reflects a clinician's assessment of the individual's overall level of functioning. *American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders* 30 (4th ed. 2000) ("DSM IV"). The DSM-IV states a GAF score from 61 to 70 indicates: "Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 34.

situations, the doctor opined that Plaintiff is able to maintain concentration and attention and can carry out simple one and two step instructions, but he is not able to carry out an extensive variety of technical or complex instructions. Additionally, Dr. Michiel opined Plaintiff is able to relate and interact with coworkers, supervisors and the general public. AR 370.

### Steven Stoltz, M.D.

Board certified internist Dr. Steven Stoltz performed an internal medicine evaluation on January 6, 2007. AR 371-375. Upon physical examination, Dr. Stoltz noted normal vital signs, normal range of motion in neck, and normal findings in the head, ear, nose and throat and lungs. Cardiovascular findings were normal, as were those regarding Plaintiff's chest and abdomen. AR 373. With regard to Plaintiff's back, range of motion findings were all within normal limits, straight leg raising was negative and no muscle spasm was noted. AR 374. Upper extremity and lower extremity range of motion findings were all within normal limits as well. AR 374-375. Gait and pulses were normal and all neurological findings were normal or intact. AR 375.

Dr. Stoltz diagnosed liver disease with hepatitis C and "Psychiatric," further noting he found "no evidence for any impairments that would limit the claimant's work-related activities" and noting attention should be given "to any recommendations made from his previous psychiatric evaluation." AR 375.

### Mental Residual Functional Capacity Assessment

In a March 26, 2007, mental RFC assessment, psychiatrist L. T. Luu found Plaintiff was not significantly limited with regard to his ability to remember locations and work-like procedures, and to understand and remember very short and simple instructions. Plaintiff was noted to be moderately limited in his ability to understand and remember detailed instructions. AR 390. Dr. Luu also concluded that Plaintiff was moderately limited in his ability to carry out detailed instructions. AR 390. Nevertheless, the doctor also concluded that Plaintiff was not significantly limited in the remaining seven categories regarding sustained concentration and persistence, nor was Plaintiff significantly limited in any category of social interaction or adaptation. AR 391. In conclusion, Dr. Luu opined that Plaintiff had the ability to understand and remember simple instructions, carry out short instructions, perform activities with direction

and maintain attention for two hours at a time, maintain appropriate behavior and accept instructions and respond appropriately to others, and respond appropriately to changes in work setting. AR 392.

### *Psychiatric Review Technique*

In a Psychiatric Review Technique, also dated March 26, 2007, Dr. Luu found insufficient evidence of an organic mental disorder, affective disorder, mental retardation or somatoform disorder. The doctor further noted with regard to schizophrenic, paranoid, and other psychotic disorders, personality disorders and substance abuse disorders, that these were medically determinable impairments that did not precisely satisfy the diagnostic criteria of the listings. AR 393-400. The functional limitations were identified as mild with regard to restriction of activities of daily living, and difficulties in maintaining concentration, persistence, or pace. Plaintiff was moderately limited in maintaining social functioning. There were no repeated episodes of decompensation. AR 401.

Dr. Luu's findings were reviewed and affirmed on December 13, 2007, by reviewing psychologist P. Davis. AR 462.

### *Physical Residual Functional Capacity Assessment*

On November 29, 2007, regarding Plaintiff's exertional limitations, Paul F. Frye, M.D., opined that Plaintiff could occasionally lift and carry fifty pounds, frequently lift and carry twenty-five pounds, could stand or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday, and could push or pull without limitation. AR 455. No postural, manipulative, visual, communicative or environmental limitations were identified. AR 455-457; *see also* AR 459-461.

### *Susan Dominic, M.D.*

#### **The November 2008 opinion**

On November 24, 2008, Dr. Susan Dominic, Associate Clinical Professor of Medicine at UCSF Fresno and attending physician, noted she had been asked by Plaintiff to provide information regarding the extent of his "medical illness and disabilities." Dr. Dominic stated that Plaintiff has chronic hepatitis C and cirrhosis with end stage liver disease, noting a "Child's-

11

Pugh classification of A and a MELD[10] score of 8, both of which are good." While Plaintiff was "fairly well compensated" at that time, Dr. Dominic opined he was "at risk of decompensation and [that] there is no effective treatment for the liver disease available to him." Further, the doctor stated Plaintiff "would potentially be a candidate" for treatment, but that the risks outweighed the benefit. Finally, Dr. Dominic indicated that she considered him to have "permanent and irreversible chronic liver disease . . . a disabling condition" that will worsen with time. AR 463.

The related treatment notes dated November 24, 2008, refer to cirrhosis and the Child Pugh "A" classification and MELD score of 8. With regard to treatment specifically, the doctor's notes indicate she "discussed risks/benefits of [treatment]" and the "poor likelihood of complete response." Plaintiff was to be monitored for complications. AR 506-507.

**Other Treatment of Note**

An abdominal ultrasound ordered by Dr. Dominic in July 2008 revealed a liver normal in size and hepatic echotexture, with subtle nodularity of the hepatic capsule compatible with cirrhosis, and splenomegaly suggesting portal hypertension. AR 475.

In treatment notes dated October 27, 2008, Plaintiff's MELD score was recorded as 10. AR 508. The cirrhosis was "well compensated" and Plaintiff was not interested in treatment for hepatitis. AR 509. No other MELD scores or Child Pugh classifications were recorded.

### 3. ALJ's Findings

ALJ Berry found as follows:

> As for the opinion evidence, the undersigned credits the consultative examiners and the State agency [physicians] over the treating physician based on supportability with medical signs and laboratory findings; consistency with the record; and, area of specialization. The medical source statement from this treating source appears to be based primarily on the subjective statements of the claimant. The underlying documentation from the treating source provided in the record reveals little, if any, objective observation of signs or symptoms or administration of an appropriate diagnostic examination along with a description of results. Such lack of documentation fails to support the limitations provided in

---

[10]"MELD" refers to Mayo End-Stage Liver Disease.

the medical source statement.  Additionally, the ultimate conclusion of permanent disability and inability to work is reserved to the commissioner to determine.

AR 14, internal citations omitted.

### 4.     Analysis

#### a.     Listing 5.05G

ALJ Berry provided specific and legitimate reasons for rejecting the contradicted opinion of Plaintiff's treating physician, Dr. Dominic.

The ALJ pointed to the fact that the medical record supports a diagnosis of cirrhosis, yet does not rise to the level of the listings, as discussed more fully below.  Additionally, the ALJ pointed to inconsistency with the record, and noted Dr. Dominic's 2008 opinion appeared to be based on Plaintiff's subjective complaints.  These are specific and legitimate reasons for adopting the opinions of the examining physicians over that of Dr. Dominic with regard to Plaintiff's physical complaints.  *See Thomas v. Barnhart,* 278 F.3d 948, 957 (9th Cir. 2002); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that contrary opinion of examining source constituted "specific and legitimate reason" for rejecting opinion of a treating source); *Andrews v. Shalala*, 53 F.3d at 1041 ("Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict").

The MELD score "is a marker of disease severity and mortality in persons with chronic alcoholic liver disease." Http://www.ncbi.nlm.nih.gov/pmc/articles/PMC65516.  A MELD score less than 9, such as Plaintiff's, indicates a mortality rate of 1.9% in a three-month period.  *See* http:wikipedia.org/wiki/Model_for_End-Stage_Liver_Disease#cite_note-5, *citing* to http://www.ncbi.nlm.nih.gov/pubmed/12512033.

Listing 5.00 pertains to the digestive system.  In particular, listing 5.05 concerns chronic liver disease and 5.05G refers to end stage liver disease.  The Social Security Administration uses the "SSA Chronic Liver Disease (SSA CLD) calculation" similar to the MELD calculation.  An

individual meets the criteria of the listing if he or she has two SSA CLD scores in excess of 22. The Commissioner's Chronic Liver Disease Calculator "has been adapted from the MELD formula documented on the UNOS Website." Http://www.ssa.gov/disability/professionals bluebook/impairments_digestive_cld.htm.

Dr. Dominic expressly noted Plaintiff's Child's Pugh[11] and MELD scores. Her opinion does not support a finding of disability. She noted Plaintiff was "fairly well compensated" at the time of her opinion and that statement would seem to comport with the opinions of the examining physicians. Further, MELD scores of 8 or 10 do not rise to the equivalent of an SSA CLD score of 22. AR 463.

Moreover, Plaintiff does not identify any evidence that establishes he meets or exceeds the listing criteria. To qualify for a listed impairment, a claimant must satisfy all of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990); *see also Roberts v. Shalala*, 66 F.3d at 182 (plaintiff has the burden of demonstrating disability under the listings). A thorough discussion of the evidence may adequately identify the basis for the step three finding. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) ("It is unnecessary to require the [ALJ], as a matter of law, to state why a claimant failed to satisfy every different section of the Listing of Impairments. The [ALJ's] four page 'evaluation of the evidence' is an adequate statement of the 'foundations on which the ultimate factual conclusions are based'"); *see also Key v. Heckler*, 754 F.2d 1545, 1549 n. 2 (9th Cir. 1985) ("the ALJ examined the medical reports submitted by the various physicians and concluded that the preponderance of the evidence did not establish the existence of the findings necessary to support a showing of disability under the Listing of Impairments").

Here, ALJ Berry discussed the evidence of record which formed the basis of the step three finding. AR 11-14. Plaintiff's citation to pages 247 and 463 of the administrative record does not establish disability. A generalized assertion of functional problems is not enough to

---

[11] An "A" in the Child-Pugh classification indicates a 92 percent survival rate. Http://www.ncbi.nlm.nih.gov/pubmed/10347102. Dr. Dominic noted Plaintiff's classification as "A." AR 463.

establish disability at step three. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). On this record, Plaintiff did not meet the burden of showing he meets or equals the criteria in listing 5.05.

Plaintiff also contends that the ALJ should have recontacted Dr. Dominic "to clarify her opinions," and that his failure to do so amounts to reversible error. (Doc. 14 at 10-11.) It is Plaintiff's burden to produce full and complete medical records, not the Commissioner's. *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999). However, when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence, the ALJ has a duty to develop the record. *Tonapetyan v. Halter*, 242 F.3d at 1150. The ALJ may discharge this duty in one of several ways, including subpoenaing claimant's doctors, submitting questions to claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Id.* However, here there was no need for ALJ Berry to recontact Dr. Dominic as the record was neither ambiguous nor inadequate. Simply put, there was no need for the ALJ to ask Dr. Dominic for clarification.

### b.     Mental Impairment

Plaintiff also contends the ALJ failed to properly evaluate his mental impairment. He cites to conflicting notations at pages 11 and 14, respectively, of the ALJ's findings. (Doc. 14 at 11.) Here, the Commissioner did not address Plaintiff's argument, claiming Plaintiff had waived any argument "regarding the ALJ's step three analysis of psychological impairments" and citing to Ninth Circuit authority refusing to address an argument not raised in a party's opening brief. (Doc. 21 at 8.) Plaintiff did indeed raise the argument in his opening brief, and thus the Court is perplexed by the Commissioner's failure to address it.

In any event, at page 11 of his findings, ALJ Berry's RFC includes Plaintiff's ability "to relate to others." At page 14 of those same findings however, the ALJ included the following:

> The claimant has the following mental limitations set forth in "Part B" of the mental listings: mild restriction of activities of daily living; *moderate difficulties in maintaining social functioning*; moderate difficulties in maintaining concentration, persistence or pace; 1-2 episodes of decompensation and no evidence of "C" criteria.

Emphasis added.

It appears the ALJ relied upon the opinions of state agency physician Dr. Luu in this regard. A comparison of Dr. Luu's opinion in the Mental RFC Assessment reveals it is inconsistent with the Psychiatric Review Technique prepared the same day. More particularly, in the Mental RFC Assessment Dr. Luu opined Plaintiff was not significantly limited in any area of social interaction. AR 391-392. Yet, in the Psychiatric Review Technique, Dr. Luu identified Plaintiff as moderately limited in maintaining social functions. AR 401.

This inconsistency cannot be overlooked. The ALJ posed two hypothetical questions to the VE at the administrative hearing. In the first hypothetical, the VE was asked to consider a worker who, *inter alia*, had the ability to relate to others (comparable to the ALJ's RFC finding at AR 11) and the VE indicated work was available for the individual. AR 54-55. However, in the second hypothetical wherein the worker would have difficulty relating to others (comparable to the ALJ's notation at AR 14), the VE indicated that no work was available to such an individual. AR 55.

Due to this inconsistency in the ALJ's findings, it cannot be said his determination in this regard in supported by substantial evidence and is free of legal error.

### *The Findings Regarding Plaintiff's Credibility*

Next, Plaintiff contends the ALJ improperly evaluated his testimony and credibility. (Doc. 16 at 12-14; Doc. 24 at 5-6.) The Commissioner asserts the ALJ's analysis is proper. (Doc. 21 at 11-13.)

A two step analysis applies at the administrative level when considering a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id*. at 1281-1282. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id*. at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack

of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ may consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen v. Chater*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment." *Orn*, 495 F.3d at 635.

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Here, the ALJ found that Plaintiff had the severe impairments of schizoaffective disorder, cirrhosis and alcohol dependence. AR 10. Further, the ALJ noted those conditions could reasonably be expected to cause the symptoms alleged. AR 12. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-1282.

"Despite the inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working." *Fair v. Bowen*, 885 F.2d at 601. It is possible to suffer disabling pain even where the degree of pain is unsupported by objective medical findings. *Id*. "In order to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision." *Id*. (citing *Magallanes v. Bowen*, 881 F.2d at 755). The findings must convincingly justify the ALJ's rejection of the plaintiff's excess pain testimony. *Id*. at 602. However, an ALJ cannot be

1  required to believe every allegation of disabling pain. "This holds true even where the claimant
2  introduces medical evidence showing that he has an ailment reasonably expected to produce
3  some pain." *Id*. at 603.
4      ALJ Berry's credibility analysis provides as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The claimant's medical records show that treating physician(s) responded with limited and conservative treatment. Such treatment is inconsistent with the medical response than would be expected if the physician(s) found the symptoms and limitations to be as severe as reported by the claimant.
>
> At the hearing, the claimant testified that the last worked in 1990 or 1991. He lives alone and gets around by having his sister drive him. He has a bus pass which he uses intermittently. The people on the bus make him feel anxious and he feels like he is unable to breath[e]. He stated that he is unable to work secondary to his anxiety, liver problems, and throat problems. He previously drank too much alcohol and the veins in his throat burst. He spits up blood on a daily basis. The claimant stated that he has not had a drink of alcohol in 4-5 years. The claimant indicated that he does nothing all day long. He prepares his meals once in a while. His sister does his laundry. His legs are in constant pain and his feet swell due to his liver condition. He spends most of his time alone and he does not socialize. Twice a month the claimant goes to Kingsview for treatment. He is not enrolled in group or individual therapy sessions. The claimant stated he is able to stand 45 minutes; walk 45 minutes; and, sit 60 minutes. He is able to carry 2 gallons of milk for short distances. Additionally the claimant testified that his liver gives him a lot of pain.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> The objective medical evidence fails to fully support the claimant. . . .

AR 11-12, internal citations omitted.

    Plaintiff argues that the ALJ's rejection of his testimony based only on a lack of objective evidence was improper. However, the lack of objective evidence was not the only basis the ALJ relied on in making his credibility determination. Therefore, this Court finds Plaintiff's argument to lack merit. The ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony, including a lack of objective medical evidence to support Plaintiff's assertions *and* limited and conservative treatment.

    The foregoing reasons are proper reasons to discount Plaintiff's credibility. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (no medical treatment or a conservative level of medical treatment has been found to suggest a lower level of pain and functional limitations);

*Fair v. Bowen*, 885 F.2d at 603-604 (claiming severe conditions yet receiving minimal, conservative, or no treatment is a basis to reject claimant's testimony); *see also Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (ALJ may discount claimant's credibility on basis of medical improvement); *Tidwell v. Apfel*, 161 F.3d 599, 601-602 (9th Cir. 1998) (finding a mild or minor medical condition with all other tests reporting normal provides a basis for rejecting claimant's testimony of severity of symptoms).

In sum, the ALJ made specific findings and identified the testimony he found not credible, as well as the evidence in the record that led to his conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991). Thus, the ALJ's credibility findings are supported by substantial evidence and are free of legal error.

## **REMAND**

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In Social Security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id*. (citation omitted); *see also Varney v. Secretary of Health & Human Serv*., 859 F.2d 1396, 1399 (9th Cir. 1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed").

Here, the Court finds that remand for further proceedings will to allow the ALJ to properly review all of the medical and psychological evidence as outlined above. Moreover, because more than three years have passed since the ALJ issued his findings, he may wish to revisit the severity of Plaintiff's cirrhosis in accordance with listing 5.05.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Pio Rodriguez and against Defendant Michael J. Astrue, Commissioner of Social Security.


IT IS SO ORDERED.

Dated:   **March 12, 2012**                    **/s/ Gary S. Austin**
                                               UNITED STATES MAGISTRATE JUDGE